**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| JENIFER PORRETTA | : | CIVIL ACTION |
| Plaintiff, | : | NO.  22-4026 |
| | : | |
| -vs- | : | |
| | : | |
| CITY OF PHILADELPHIA | : | PLAINTIFF REQUESTS |
| (PHILADELPHIA POLICE | : | A TRIAL BY JURY |
| DEPARTMENT) | : | |
| and | : | |
| SERGEANT MCCLAIN | : | |
| and | : | |
| SERGEANT CARTER | : | |
| and | : | |
| CORPORAL MCGLACION | : | |
| and | : | |
| CAPTAIN DRISSEL | : | |
| and | : | |
| SERGANT CONWAY | : | |
| and | : | |
| SHAWN HALL | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Jenifer Porretta ("Ms. Porretta" or "Plaintiff"), by and through undersigned counsel hereby files this Civil Action Complaint against Defendants, City Of Philadelphia, Sergeant McClain, Sergeant Carter, Corporal McGlacion, Captain Drissel, Sergant Conway (collectively "Defendants") and upon information and belief avers the following:

## PARTIES

1.     Plaintiff, Jenifer Porretta ("Ms. Porretta" or "Plaintiff") is an adult female who resides in the Commonwealth of Pennsylvania, within the City and County of Philadelphia.

2.      Defendant, City of Philadelphia is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an address for the purposes of service at  1515 Arch Street, Philadelphia, Pennsylvania 19103.

3.      Defendant, Sergeant McClain (*individually*) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1515 Arch Street, Philadelphia, Pennsylvania 19103.

4.      At all times relevant to this Civil Action, Defendant McCain acted under color of state law, as a Philadelphia Police Officer and subjected Plaintiff to violations of her rights afforded to Plaintiff by the United States Constitution  including but not limited to Plaintiff's right to equal protection under the law.

5.      Defendant, Sergeant Carter (*individually*) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1515 Arch Street, Philadelphia, Pennsylvania 19103.

6.      At all times relevant to this Civil Action, Defendant Carter acted under color of state law, as a Philadelphia Police Officer and subjected Plaintiff to violations of her rights afforded to Plaintiff by the United States Constitution  including but not limited to Plaintiff's right to equal protection under the law.

7.      Defendant, Corporal McGlacion (*individually*) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1515 Arch Street, Philadelphia, Pennsylvania 19103.

8.      At all times relevant to this Civil Action, Defendant McGlacion acted under color of state law, as a Philadelphia Police Officer and subjected Plaintiff to violations of her rights afforded to Plaintiff by the United States Constitution  including but not limited to Plaintiff's right to equal protection under the law.

9.      Defendant, Captain Drissel (*individually*) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1515 Arch Street, Philadelphia, Pennsylvania 19103.

10.     At all times relevant to this Civil Action, Defendant Drissel acted under color of state law, as a Philadelphia Police Officer and subjected Plaintiff to violations of her rights afforded to Plaintiff by the United States Constitution  including but not limited to Plaintiff's right to equal protection under the law.

11.     Defendant, Sergant Conway (*individually*) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1515 Arch Street, Philadelphia, Pennsylvania 19103.

12.     At all times relevant to this Civil Action, Defendant Conway acted under color of state law, as a Philadelphia Police Officer and subjected Plaintiff to violations of her rights afforded to Plaintiff by the United States Constitution  including but not limited to Plaintiff's right to equal protection under the law.

13.     Defendant, Shawn Hall (*individually*) is an adult individual who resides in the Commonwealth of Pennsylvania with a business address for the purposes of service at 1515 Arch Street, Philadelphia, Pennsylvania 19103.

14.     At all times relevant to this Civil Action, Defendant Shawn Hall acted under color of state law, as a Philadelphia Police Officer and subjected Plaintiff to violations of her rights afforded to Plaintiff by the United States Constitution  including but not limited to Plaintiff's right to equal protection under the law.

**NATURE OF THE CASE**

15.     Plaintiff complains pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and seeks damages to redress injuries Plaintiff suffered as a result of violations of Plaintiff's rights afforded by the United States Constitution, including the right to equal protection under the laws.

**JURISDICTION AND VENUE**

16.     This action involves a Question of Federal Law under 42 U.S.C. § 1983.

17.     The honorable Court also has supplemental jurisdiction over any claims pursuant to the laws of the Commonwealth of Pennsylvania and/or the City of Philadelphia.

18.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in Philadelphia County where the constitutional violations of Plaintiff's rights occurred.

19.     Plaintiff also intends to include counts for violations of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), once Plaintiff has exhausted her administrative remedies and is entitled to file suit in court pursuant to those laws.

20.     Plaintiff's lawsuit under Section 1983 must be filed so Plaintiff preserves all rights at this time, however, Plaintiff also intends to file a Charge of Discrimination with the EEOC, dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations, pursuant to all acts that occurred within the statutory period for such filing.

21.     Plaintiff intends to file an amended complaint as early as possible and once she has exhausted her administrative remedies.

## MATERIAL FACTS

22.     Plaintiff began her employment with the Philadelphia Police Department in August 2008.

23.     Plaintiff is currently employment with Philadelphia Police Department and continues to be subjected to adverse employment actions subject to Defendants severe and pervasive discrimination and harassment in the workplace.

24.     Plaintiff makes all claims here in under § 1983, which provides for a two-year statute of limitations.  Accordingly, all damages Plaintiff seeks are for injuries and damages Plaintiff suffered as a result of illegal conduct that occurred between October 7, 2020, and the present.

25.     This lawsuit does involve background evidence that occurred prior to October 7, 2020, however, Plaintiff's claims and the Counts below are only subject to those acts and illegal conduct that occurred in the past two years.

26.     Plaintiff first began employment with the Philadelphia Police Department ("PPD") in August 2008, as a Police Officer.

27.     Plaintiff has been assigned to the 12th District since her employment began in 2008, however, Plaintiff is currently detailed out of the 12th District as part of Defendants' strategy of discrimination and retaliation based on Plaintiff's gender and in violation of Plaintiff's rights to equal protection under the laws.

28.     Defendants have agreed that Defendants violated their own policies which are premised upon employees' rights under the United States Constitution and employees' rights to equal protection under the laws in order to subject Plaintiff to retaliation because of her gender.

29.     Plaintiff is currently detailed to the main police building (headquarters) because Plaintiff attempted to vindicate her Constitutional rights by reporting sexual harassment and Defendants' illegal conduct which was based on Plaintiff's sex and gender.

30.     From 2008 until the present Plaintiff has been assigned to the 12th District without any transfers, however, Plaintiff has not worked in the 12th District since January 2021, because of Defendants violation of Plaintiff's Constitutional rights including the right to equal protection, due process, substantive due process.

31.     Every violation of Plaintiff's constitutional rights occurred under color of state law by employees of the City of Philadelphia.

32.     The first time that Plaintiff was subjected to sexual harassment in the workplace was by Defendant, Shawn Hall who is another Officer.

33.     Defendant, Shawn Hall subjected Plaintiff to nonstop continuing sexual advances including writing letters to Plaintiff that graphically described Defendant, Shawn Hall's sexual advances, sexual harassment in the workplace, and refusal to consider Plaintiff's rights under the United States Constitution.

34.     Defendant, Shawn Hall's sexual harassment occurred while Shawn Hall was on duty, in uniform, at work, and while Shawn Hall was acting under color of state law.

35.     Defendant Shawn Hall detailed in writing the sexual harassment where Defendant, Shawn Hall explained that he did not care that Plaintiff was in a serious relationship with an individual who later became Plaintiff's husband.

36.     Plaintiff's significant other was also a PPD Police Officer who worked with Plaintiff and Defendant, Shawn Hall, in the 12th District.

37.     Defendant, Shawn Hall knew that Plaintiff and her significant other were romantically involved in a serious and permanent relationship, but stated in writing that Defendant,

Shawn Hall did not care and intended to continue signaling Plaintiff out because of her sex and gender and subject Plaintiff to discrimination and harassment in the workplace in violation of Plaintiff's rights under the United States Constitution.

38.     Defendant, Shawn Hall wrote in one letter that he "missed [Plaintiff] so much" and that he intended to give Plaintiff a "hand, arm, head, and shoulder massage" and that Defendant, Shawn Hall "lov[ed] [Plaintiff] so very much…"   A copy of this letter is attached and marked Exhibit A.

39.     In another letter, Defendant, Shawn Hall wrote that Plaintiff was one of the only people who could "put up with me on a daily basis" and promised Plaintiff that "I'm not going to hurt you anymore" and wrote that "7-22-11" was the "last day I'm going to hurt you."   A copy of the letter is attached as Exhibit B.

40.     Defendant, Shawn Hall did not stop hurting Plaintiff because of her gender on July 22, 2011, but continued to hurt Plaintiff because of Plaintiff's gender until 2021, and for years in between July 22, 2011, and 2021.  Exhibit B.

41.      Defendant, Shawn Hall also wrote that Plaintiff did "too much for [Shawn Hall] to treat [Plaintiff] that way."  Exhibit B.

42.     Defendant, Shawn Hall also wrote "I do love you with all of my heart and I will love you under the day I die." Exhibit B.

43.     At the time, Defendant, Shawn Hall was Plaintiff's partner and Plaintiff was forced to work with Defendant, Shawn Hall on a daily basis while Defendant, Shawn Hall violated Plaintiff's rights, while on duty, in uniform, under color of state law.

44.     Defendant, Shawn Hall finished this writing with, "you are sexy as hell." Exhibit B.

45.     In another letter Defendant, Shawn Hall continued the sex and gender discrimination and continued to subject Plaintiff to violations of her rights under the United States Constitution, under color of state law, with threatening statements including, "I want to cherish every moment were together because you never know how many more you have."  A copy of this letter is attached as Exhibit C.

46.     This letter was entitled, "you're my beautiful surprise" and contained the inscription, "… all  I can do is promise to love you with all my heart the best way I can." Exhibit C.

47.     In another letter, Defendant, Shawn wrote, "I love you … you are my pooh bear and I will dance like this when this is all behind us."   A copy of the letter is attached as Exhibit D.

48.      In another letter, Defendant, Shawn wrote, "… I have never wanted anything in my life as much as I want you.  **I am losing my mind** to think that I have to wait for the right time to call you mine.  When the day comes that we're together I want you to know that I will love you always…" A copy of the letter is attached as Exhibit E.

49.     Defendant, Shawn Hall continued to subject Plaintiff to sexual harassment in the workplace writing, "I have only one fear and that is that you will tell me that you can't see us as nothing more than friends.  I am sure you will be with me one day as sure as I'm sitting here. Exhibit E.

50.     Defendant, Shawn Hall's letter (Exhibit E) took a dark and threating tone, just like many other letters Defendant, Shawn Hall penned, stating, **"If you think back to all that I told you I was going to do and did it what makes you think I'm not going to have you."**  Exhibit E.

51.     Defendant, Shawn Hall wrote, **"I am on god's good side and he gives me all that I want and desire."** Exhibit E.

52.     Defendant, Shawn Hall wrote, "… **the day when I'm not with you kill me** because I am usually not happy until I am with you.  **I find myself daydreaming of holding you tight, kissing you deeply, and dominating that body of yours."** Exhibit E.

53.     Defendant, Shawn Hall wrote, "my love is so far gone and deep in the abyss of my heart that it will be there forever.  So many guys' hearts have been ripped out by you but yet you have not told me to stop so the hope is there." Exhibit E.

54.     A simple review of the letters written by Defendant, Shawn Hall confirms that Plaintiff never engaged Defendant, Shawn Hall in a sexual or romantic relationship, and Plaintiff made it clear from the outset of the sexual harassment that Plaintiff was seriously engaged in another relationship (Plaintiff's now husband and Defendant, Shawn Hall's coworker in the 12th District), however, Defendant, Shawn Hall laughed at Plaintiff's rejections and continued the nonstop, severe and pervasive sexual harassment.

55.     Defendant, Shawn Hall wrote, "**You may be waiting for me to stop on my own but I won't and when the day comes when I'm on top of you and you're pinned under me I'll only say I told you so because god known I won't be denied what's mine."** Exhibit E.

56.     Defendant, Shawn Hall wrote in another letter, describing the way in which Defendant, Shawn Hall was hurting Plaintiff, Jenifer Porretta, writing, … nobody should hurt you that way you are way too special.  I have been guilty once or twice for treating you like shit but I woke up to you and can't do it again." A copy of this letter is attached as Exhibit F.

57.     Defendant, Shawn Hall wrote, "… you will be my fantasy forever…" Exhibit F.

58.     In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, "I can't believe how much I have come to love you in a short

period of time. … You are one of the sexiest women I have ever known and will ever know. … Everything I have said has come true so believe me once again when I say that **you will be mine** someday. …" A copy of this letter is attached as Exhibit G.

59.     In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, while on duty, working, "As I sit here next to you staring at your beauty I can't help but think that my heart is filled with both joy and sadness. … Sadness because **there's nothing I can do to quench this hunger I have for you**. …" A copy of this letter is attached as Exhibit H.

60.     Defendant, Shawn Hall wrote, "To say I love you would be robbing the word of its meaning … **Its more I think that I am obsessed with you.** I eat, sleep, and relax to the thought of you.  But it's also getting difficult to sit here next to you on a daily basis and not being able to do the thinks I want to you." Exhibit H.

61.     Defendant, Shawn Hall wrote about Plaintiff, Jenifer Porretta's husband, writing, "As I was trying to sleep last night I started to think about you and Joe (Plaintiff's husband) and realized I am starting to get in the way.  When I speak to you about Joe and make fun of him that is my coping mechanism for the jealousy I have toward him for living the reality that I only have in my dreams." Exhibit H.

62.     Defendant, Shawn Hall wrote, "they say it is better to have loved and lost than never to have loved at all but you were never mine to lose so I'll just love you from a distance. Exhibit H.

63.     Defendant, Shawn Hall wrote, "… you have broken me.  But now I need to withdraw from you before my heart gets to a place from which there is no return… Exhibit H.

64.     Defendant, Shawn Hall never withdrew or discontinued the sexual harassment at the time he wrote (Exhibit H) and continued past 2021 to subject Plaintiff, Jenifer Porretta to severe and pervasive sexual harassment in the workplace.

65.     Defendant, Shawn Hall moved from the 12th District many years later for a temporary period of time, when Defendant, Shawn Hall attempted to become a detective in the PPD, however, Defendants moved Defendant, Shawn Hall right back to the 12th District, despite Plaintiff's many reports of sexual harassment and the mountain of evidence that Defendant, Shawn Hall was consistently subjecting Plaintiff to violations of her rights under the United States Constitution and right to equal protection under the laws.

66.     Defendant, Shawn Hall continued the sexual harassment and signaling Plaintiff out for discrimination and harassment based upon Plaintiff's gender.

67.     Defendant, Shawn Hall wrote in another letter, "I promise you I will not leave you again because it hurt bad not to have you.  So in closing I want you to know that **no matter who you are with or the amount of time you are with him you most definitely belong to me**, mind body and sold and one day you will realize it."  A copy of this letter is attached as Exhibit I.

68.     In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, "I still love you a lot but this time its different its more of like a sister and best friend. … You probably thought you would never get a card again but surprise here it is it's a "friend" card. … I bet you thought I would change it up once I realized you and Joe were staying together but what kind of friend would I be if I did that.  **So again you will never get rid of me** my friend and besides Joe may have your body but friendship is forever…" A copy of this letter is attached and marked Exhibit J.

69.     In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, "Just a realistic reminder that you're the most beautiful person I

know and your ass is unbelievable.  I love you and don't know what else to say.  You are unbelievable and your body is the stuff of legends.  **I want to fuck you so bad I'm speechless**. Scale of 1 – 10 you're a 50.  Love you.  You will be mine."  A copy of this letter is attached and marked Exhibit K.

70.    In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, "… I hit the Powerball that second week of October when I met you.    Although my intentions in the beginning were not good, the more I got to know the real Jen, I realized how much I do love you. You say it's not possible to love two people but I'm proof you can."  A copy of this letter is attached and marked Exhibit L.

71.    In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, "The thought of me making you feel bad turns my stomach. There is no way my intentions were bad, but for the way I made you feel I am sorry. … I will always love you and your children. … When the day comes when God takes me over, hopefully you will take your time, because as a song goes I'll grab a bench and wait for you because I want and need you like my heart needs another beat and my lungs need another breath. A copy of this letter is attached and marked Exhibit M.

72.    In another letter from Defendant, Shawn Hall to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall wrote, "My love for you is far more than I ever expected it to be.  You are that special to me.  I can never give you up.  You are a permanent or permanent part of me and my heart.  I will never give up hope of being with you.  I am glad you are happy with Joe and you're doing good in your relationship.  But if it doesn't work I'll always be there for you. You could do worse than me.  You are extremely sexy and I love to look at you and daydream of what could be. … I Love you very much and I'm holding onto my dream (you)."  A copy of this letter is attached and marked Exhibit N.

73.     Defendant, Shawn Hall openly subjected Plaintiff, Officer, Jenifer Porretta to sexual harassment, without any attempt to conceal the sexual harassment, gender discrimination, and nonstop abuse to which Plaintiff was subjected on a daily basis because of her gender and sex.

74.     Defendants were well aware that the City of Philadelphia and the PPD would take no meaningful action in response to reports of sexual harassment and that it was open season on female police officers in the department without repercussion or consequence.  This was the City's unofficial policy, custom, and practice and the City was deliberately indifferent to the rights of female officers in the department.

75.     Defendant, Shawn Hall left heart-shaped love letters around for Plaintiff, Officer, Jenifer Porretta to find while working.  These heart-shaped letters contained handwritten sex-based admissions including, "I love you pooh bear" and "hope all your dreams and desires come true baby girl" and "I love you you're doing wonderful me and God have all that you seek" and "how were you able to steal my heart so quickly" and "really I do" and "It's not about me anymore.  I want to do everything in my power to give you the dreams of your life.  My dream is working itself out."  A copy of these handwritten notes from Defendant, Shawn Hall are attached and marked Exhibit O.

76.     Defendant, Shawn Hall continued to subject Plaintiff, Officer Jenifer Porretta to severe and pervasive sexual harassment and gender discrimination in the workplace under color of state law.  Defendant, Shawn Hall left notes everywhere for Jenifer Porretta to find while both Defendant, Shawn Hall and Plaintiff were working on the clock and in full uniform.

77.     Defendant, Shawn Hall left countless of these handwritten notes for Plaintiff including the following:

        a.   "Jenner the most beautiful girl in the world."

b.   "This much you are my dream come true."

c.   "To my future woman I love you sexy."

d.   "Baby girl."

e.   "Jen you are the light at the end of this very dark tunnel Love ya Pooh bear."

f.   "Baby girl sexy ass."

g.   "Sexy Jenny."

h.   "The love of my life sexy ass."

i.   "Jen the true princess of my life I love you."

j.   "Sugar Mama."

k.   "Jen my sugar mama from heaven."

l.   "To my princess Love you."

m.   "To my very special and sexy girl with that awesome body."

n.   "To my beautiful body."

78.   The "Joey" referred to by Defendant, Shawn Hall was Defendant, Shawn Hall's coworker and police officer in the same 12th District where Plaintiff and Defendant, Shawn Hall worked.

79.   For every letter, handwritten note, or card that Defendant, Shawn Hall gave to Plaintiff, Jenifer Porretta, Defendant, Shawn Hall also subjected Plaintiff, Jenifer Porretta to sexual harassment through comments or conduct.

80.   The comments and conduct to which Plaintiff, Jenifer Porretta was subjected by Defendant, Shawn Hall was nonstop and went on for year after year after year without respite and without any investigation into Defendant, Shawn Hall's nonstop, continuous sexual harassment and gender discrimination in the workplace.

81.     Plaintiff, Jenifer Porretta engaged in protected activity on numerous occasions and reported the sexual harassment, however, Defendant, Shawn Hall had absolutely no fear that Defendant, City of Philadelphia/Philadelphia Police Department would do anything to investigate or ameliorate the severe and pervasive comments and conduct.

82.     Defendant, Shawn Hall was right not to fear repercussions from Defendant, City of Philadelphia and the PPD, because the City of Philadelphia and the PPD has spent decades covering up reports of sexual harassment and publishing female officers who reported sexual harassment in the workplace.

83.     Defendant, City of Philadelphia and the PPD has spent so much time covering up sexual harassment, protecting the sexual harassers and the sexual assaulters, and punishing female officers for engaging in protected activity that the City of Philadelphia and the PPD had essentially adopted the official policy that any women who tried to report sexual harassment would be punished.

84.     Sexual harassment was severe and pervasive throughout the City of Philadelphia's PPD, and the PPD maintained a policy to protect the harassers and punish the victims of harassment.

85.     This is the reason that Defendant, Shawn Hall had no compunction whatsoever with well documenting his sexual harassment and sex and gender discrimination through countless handwritten letters, notes and cards.

86.     Defendant, Shawn Hall knew full well that there was little to nothing that Plaintiff, Jenifer could do to get help from the City of Philadelphia or the PPD.

87.     The PPD official policy toward women who try to report sexual harassment in the workplace may not be written but through custom and practice is well known.

88.     The PPD's official policy through custom and practice is to punish the women who are sexually harassed and to protect the harassers.

89.     The PPD executes this policy, custom, and practice by promoting the harassers or refusing to take any action against the harassers.

90.     The PPD executes this policy, custom, and practice by punishing the women including Plaintiff, Jenifer Porretta and changing the terms and conditions of employment for the women who come forward and report the harassment.

91.     This is exactly what occurred when Plaintiff reported the sexual harassment.

92.     Plaintiff was forced to continue working with those who had subjected Plaintiff to harassment, abuse and retaliation, and Plaintiff was outright mocked and laughed at by the same people who subjected Plaintiff to harassment and abuse.

93.     Defendant, Shawn Hall constantly spoke about Plaintiff's body parts and being sexy, from 2010 on, and sometime around 2020, the City of Philadelphia and the PPD brought Defendant, Shawn Hall back to the 12th District and assigned Defendant, Shawn Hall to work on the same squad as Plaintiff, Jenifer Porretta so that the harassment and the abuse began again.

94.     Plaintiff engaged in protected activity and reported the ongoing harassment and abuse sometime around December 2020 and Defendants subjected Plaintiff to multiple adverse employment actions by forcing Plaintiff to change the terms and conditions of her employment and taking no action against Defendant, Shawn Hall.

95.     Of course this is perfectly in line with the way that the City of Philadelphia and the PPD had responded to sexual harassment for decades.  This was the PPD's policy, practice, and custom.

96.     Even after Defendants were on express and actual notice regarding all of Defendant, Shawn Hall's illegal conduct and comments, Defendants allowed Defendant, Shawn Hall to be promoted.

97.     Defendant, Shawn Hall took a promotional test to become a detective and was transferred to the First District but he was transferred back to the 12th District as soon as Defendant, Shawn Hall abandoned his attempt to be a detective.

98.      Plaintiff's husband informed the then Lieutenant Ruff, who was the Lieutenant in the 12th District at that time, asking why is Defendant, Shawn Hall back here and back in direct contact with Jenifer Porretta.

99.     Defendant, Shawn Hall should not have been within a mile of Plaintiff if Defendants had even inkling of a policy designed to eliminate sexual harassment in the workplace.

100.    Plaintiff filed an EEO and EEOC complaint about Defendant, Shawn Hall where all of the letters, notes and cards as well as the conduct and comments were made known to Defendants.

101.     Plaintiff also notified Captain Driscol but Defendant, Shawn Hall continued in the 12th District and Plaintiff continued to be subjected to a hostile work environment extending past October 2020 and far into 2021.

102.    Defendant, Shawn Hall was not only assigned to the 12th District but also assigned to the same squad as Plaintiff.

103.    The entire time, Plaintiff continues to be subjected to sexual harassment and Defendant, Shawn Hall is telling Plaintiff both in writing and verbally that he does not care about Plaintiff or Plaintiff's husband's feelings and he continues to subject Plaintiff to sexual

harassment from 2010 until 2021 – with the only period of time without nonstop abuse when Defendant, Shawn Hall was assigned to the First District.

104.    Plaintiff engaged in protected activity multiple times at the end of 2020 – beginning of 2021, by reporting Defendant, Shawn Hall, including but not limited to reports to Internal Affairs ("IA").

105.    Plaintiff was singled out and treated differently because of her reports.

106.    Plaintiff was injured because the 12th district punished Plaintiff because of her reports and because Plaintiff engaged in protected activity.

107.    Defendant, Shawn Hall begins the sexual harassment again in January 2020 and this continued through the time when Plaintiff was detailed out of the 12th district to Police Head Quarters.

108.    Plaintiff being detailed out of the 12th District was an adverse employment action which significantly interf3ered with Plaintiff's work environment including hours, ability to work overtime and ability to earn income.

109.    Plaintiff, not Defendant, Shawn Hall was detailed out of the 12th District due to Plaintiff engaging in protected activity.

110.    The first time that Plaintiff was detailed out of the 12th District because of Plaintiff's reports of discrimination and harassment in the workplace was December 2020.

111.    Sometime around December 2020, Plaintiff is detailed to Court Attendance.

112.    In being detailed to court attendance Plaintiff's life was thrown into upheaval.

113.    Plaintiff was the subject of abusive, ridicule, and scorn due to Plaintiff's new reports of discrimination and harassment in the workplace by Defendant, Shawn Halland now by Defendant, Sergeant McCain too.

114.    Sometime around mid-2020, Defendant, McCain subjected Plaintiff to sexual harassment.

115.    Then Plaintiff and Plaintiff's husband, Joseph Porretta Jr. reported to Lieutenant Ruff how wrong it was for the sexual harassment to start back up again from the same person who had harassed Plaintiff for years.

116.    This is when the campaign of retaliation became intolerable.

117.    After Plaintiff and Plaintiff's husband reported the harassment, Plaintiff is moved from 1B to last out and Defendant, Shawn Hall is not moved.

118.    Then after Plaintiff is moved to last out, to get away from Defendant, Shawn Hall, Defendant, Shawn Hall moved to 2 squad which moved him back closer to Plaintiff.

119.    None of this would have been an issue had Defendants not moved Defendant, Shawn Hall back to the same District where Plaintiff had worked since 2008.

120.    Also now Defendant Shawn Hall was doing overtime in last out squad and Plaintiff is forced to work directly with Defendant, Shawn Hall again after the years and years and years of abuse.

121.    Defendant, McCain begins to subject Plaintiff to sexual harassment sometime around December 29, 2020 – Plaintiff is 3b squad.

122.    Sometime around December 30, 2020, Plaintiff reports issues related to sexual harassment and retaliation to IA.

123.    Sergeant Carter then begins to subject Plaintiff to a campaign of retaliation which led to Plaintiff being physically injured in the workplace.

124.    When Plaintiff gets moved, she is now working with Sergeant Carter.

125.    The first day that Plaintiff gets to last out Plaintiff gets a call from Sergeant Carter over the radio directing Plaintiff to take headquarters.  This means that Carter wants to speak to Plaintiff at headquarters.

126.    Plaintiff arrived at headquarters and Defendant, Carter says "you failed to comply with MPO which is Municipal Police Training and so you have to work in plain clothes and took Plaintiff's gun.

127.    This was retaliation.

128.    Defendant, Carter said you cannot get your gun until you qualify, however, because of COVID everything was shut down and so Plaintiff had to work inside in street clothes.

129.    Defendant, Carter kept saying you are probably going to have to go to Harrisburg. "Go to Harrisburg" means requalify for the entire police test which takes a lot of time.

130.    There were other officers who kept their guns and they were in the same position as Plaintiff.

131.    At or around that time that Plaintiff worked at headquarters in street clothes, Defendant, McClain subjected Plaintiff to abusive, sexual comments about Plaintiff's ass and breast.

132.    Defendant, McCain began subjecting Plaintiff to severe and pervasive sex-based comments and conduct, telling Plaintiff about sex and sexual conquests and graphically describing sex and sex acts and getting blow jobs.

133.    Defendant, McCain said that when he goes to Thailand he "likes the boy-toys" and that he "likes to have sex with the young Thai boys."

134.    Defendant, McCain also told Plaintiff, "I like girls and I like when your titties bounce"

135.    Defendant, McCain also told Plaintiff, "I like your thick ass"

136.    Defendant, McCain also told Plaintiff, "I like girls with thick asses"

137.    Defendant, McCain also told Plaintiff, "I like blowjobs."

138.    Defendant McCain also told Plaintiff "we used to get blowjobs at headquarters all the time" and  "I used to fuck at headquarters all the time".

139.    There is nonstop ongoing comments of this nature from Defendant, McCain to which Plaintiff was subjected between January 2020 and January 2021.

140.    And in December 2020, Plaintiff reports this to internal affairs in addition to reports about Defendant, Shawn Hall.

141.    When Plaintiff filed the internal affairs complaint in December 2020 about McCain, Defendant, Carter got involved and subjected Plaintiff to retaliation.

142.    Sometime around January 2, 2021, during roll call Defendant, Sergeant Carter subjected Plaintiff to retaliation and said in front of everyone – "keep in mind that when you throw a supervisor under the bus, you are going to have a problem with other supervisors."

143.    This was a threat that Sergeant Carter carried out against Plaintiff due to Plaintiff engaging in protected activity.

144.    Defendant, Sergeant Carter represents everything that is wrong with the Philadelphia Police Department and with Police Departments across the United States.

145.    Defendant, Sergeant Carter openly expressed his position that it is more important to defend fellow officers who break the law, than to protect victims of same abuse perpetrated by those very officers.

146.    Defendant Sergeant Carter said in words or substance, "anytime you fuck with a supervisor, you are going to have a problem.  I don't give a fuck who you are, you don't fuck with the supervisors."

147.    Defendant, Carter said, "you don't throw supervisors under the bus."

148.    So after Plaintiff engaged in protected activity, sometime around the end of 2020, Defendant, Carter began a campaign of retaliation against Plaintiff.

149.    Defendant, Sergeant Carter began making comments to Plaintiff about retaliation and about Plaintiff throwing McCain under the bus.

150.    Defendant, McCain made comments against Plaintiff in front of other police officers in the days following Plaintiff's reports to IA in December 2020.

151.    From there on, Defendant, Carter attacked Plaintiff about everything in a campaign of retaliation designed to make Plaintiff regret the day when Plaintiff engaged in protected activity and reported McCain.

152.    Defendant, Carter made comments to Plaintiff of a sexual nature including telling Plaintiff that he heard that Latino women are crazy in bed.

153.    Defendant, Carter stated, "I heard that you are wild."

154.    Defendant, Carter was furious with Plaintiff because of Plaintiff's reports of discrimination and harassment in the workplace.

155.    Defendant, Sergeant Carter saw Plaintiff after Plaintiff was detailed out of the 12th District and he and his brother laughed in Plaintiff's face about the fact that Plaintiff reported sexual harassment and only Plaintiff was punished for her reports.

156.    Plaintiff reported this to her corporal at that time who was Corporal Ptsis and Corporal Ptsis did nothing and told Plaintiff in words or substance, "I retire in 6 months and I do not want any problems.  So don't bring this to me.  You do what you got to do."

157.    Plaintiff was first detailed to Court attendance in 2021 – this was another adverse employment action.

158.    There are time checks when Defendant, Carter would not allow Plaintiff to be relieved from duty.

159.    Defendant, Carter threatened Plaintiff at role call in front of all the other officers, stating in words or substance, "you want to throw time checks out there.  You think you are going to fuck with me with time checks.  Don't be surprised if you don't have any back up out there.  Don't be surprised if you call for back up and nobody responds."

160.    This was a blatant threat that was made against Plaintiff in front of the officers at roll call.

161.    As a result of Defendants' conduct Plaintiff has been extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

162.    As a result of Defendants' conduct Plaintiff  was subjected to discriminatory treatment and retaliation, and continues to suffer severe emotional distress and physical ailments.

163.    As a result of Defendants' conduct Plaintiff has been subjected to discriminatory and retaliatory conduct, and suffers from regular panic attacks.  Plaintiff has difficulty sleeping and eating.

164.    Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, and Plaintiff demands Punitive Damages against all Defendants jointly and severally.

165.    Defendants have established a pattern and practice of discrimination, retaliation, and harassment through their actions

166.    The discrimination and retaliation will continue beyond the date of this complaint, and as such, Plaintiff makes a claim for all continuing future harassment and retaliation.

167.    The above are just some of the examples of unlawful and discrimination and retaliation to which Plaintiff was subjected.

168.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

169.    Plaintiff suffers from anxiety, fear, and nightmares relating to Defendants and Defendants' employees conduct.  Plaintiff is unable to sleep or eat.

170.    As a result of Defendants' conduct, Plaintiff has been humiliated, degraded, victimized, embarrassed and emotionally distressed.

171.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, a loss of salary, bonuses, benefits and other compensation, which such employment entails.  Plaintiff has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

172.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

173.    The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

174.    Plaintiff claims that Defendants discriminated against Plaintiff because of Plaintiff's sex and gender and because Plaintiff complained and opposed the unlawful conduct of Defendants related to Plaintiff's protected class.

175.    Plaintiff further claims aggravation, activation, and exacerbation of any pre-existing condition.

176.    Plaintiff claims unlawful constructive discharge and/or unlawful actual discharge and also seeks reinstatement.

**COUNT I**
**42 U.S.C. §1983**
**VIOLATIONS OF EQUAL PROTECTION CLAUSE**
**RIGHT TO DUE PROCESS AND SUBSTANTIVE DUE PROCESS**
**(against all named Defendants)**

177.    Plaintiff hereby incorporates all allegations contained in the foregoing paragraphs as fully as if they were set forth at length.

178.    42 U.S.C. Section 1983 stated:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

177.    Defendants and their employees and agents violated Plaintiffs' First, Fifth, Fourth and Fourteenth Amendment rights, including the right to equal protection under the laws.

178.    Defendants acted under color of state law to violate the plaintiff's rights to equal protection and due process of law.

179.    Defendants' unlawful actions were done with the specific intent to deprive Plaintiff of her constitutional right to be free from unreasonable seizer and to enjoy equal protection under the laws.

180.    Defendants also violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 through discrimination and retaliation for reporting said discrimination.

181.    All individual Defendants acted under color of state law at all times relevant to this civil action.

182.    The City of Philadelphia is liable under Section 1983 under Monell.


## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP,  PLLC**

By:  _____/s/ Seth D. Carson_____
        Seth D. Carson, Esquire
        1845 Walnut Street, Suite 1600
        Philadelphia, Pennsylvania 19103
        Phone: 215.391.4790
        Email: seth@dereksmithlaw.com

DATED: October 7, 2022